Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                          )
IN RE:                                    )   CASE NO.        09-32125 (LMW)
                                          )
  THOMAS W. KROEBER,                      )   CHAPTER         7
                                          )
              DEBTOR.                      )
- - - - - - - - - - - - - - - - - - - - - - - - - - - -
  ERA FRANCHISE SYSTEMS LLC,              )   ADV. PRO. NO.   09-3093
                                          )
              PLAINTIFF                    )   ECF NOS.        11, 19, 21, 26, 35
                                          )
      vs.                                 )
                                          )
  THOMAS W. KROEBER,                      )
                                          )
              DEFENDANT.                   )
- - - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES**

Kristin T. Mihelic, Esq.                  Attorney for Movant/Plaintiff
Forman Holt Eliades & Ravin LLC
80 Route 4 East – Suite 290
Paramus, NJ 07652

Sharyn B. Zuch, Esq.                      Attorney for Movant/Plaintiff
Wiggin and Dana, LLP
One CityPlace
185 Asylum Street
Hartford, CT 06103-3402

Kenneth E. Lenz, Esq.                     Attorney for Movant/Defendant
John M. Barton, III, Esq.
Lenz Law Firm, LLC
P.O. Box 965
236 Boston Post Road, 2nd Fl.
Orange, CT 06477

**MEMORANDUM AND ORDER RE:
MOTION TO AMEND COMPLAINT AND MOTION TO DISMISS[1]**

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

The matters before the court are the following (the "Matters"):  (1) the above-referenced debtor's

(the "Debtor") Motion To Dismiss this adversary proceeding (A.P. ECF No. 11, the "Motion To Dismiss");

(2) the above-referenced plaintiff's ("ERA") "response" to the Motion To Dismiss (deemed herein to be

an objection to the Motion To Dismiss (A.P. ECF No. 19, the "ERA Objection")); (3) ERA's Motion for

Leave To Amend Adversary Complaint (A.P. ECF No. 26, the "Motion To Amend"); and (4) the Debtor's

objection to the Motion To Amend (A.P. ECF No. 35, the "Debtor Objection").  This court has jurisdiction

over this adversary proceeding as a core matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and that certain

order dated September 21, 1984 of this District Court (Daly, J.).[2]

I.      **BACKGROUND**

A.      **Chapter 7 Case**

This case was commenced by the filing of a voluntary petition under chapter 7 of the United States

Bankruptcy Code on August 4, 2009 (the "Petition Date").  (*See* Case ECF No. 1.)  Contemporaneously

with the filing of that petition, the Debtor filed bankruptcy schedules and a Statement of Financial Affairs

(included in Case ECF No. 1, collectively, the "Original Schedules").  Among other information, the

---

[1]      This memorandum and order also reconsiders and/or clarifies *sua sponte* this court's order
dated January 6, 2010 (A.P. ECF No. 21, the "Denial Order") which denied the Motion To Dismiss in part.
References herein to the docket of this adversary proceeding appear in the following form: "A.P. ECF No.
___." References herein to the docket of this chapter 7 case appear in the following form: "Case ECF
No.___."

[2]      That order referred to the "Bankruptcy Judges for this District" "all cases under Title 11,
U.S.C., and all proceeding arising under Title 11, U.S.C., or arising in or related to a case under Title 11,
U.S.C. . . . ."

Original Schedules state the following as of the petition date:  (a) the Debtor owned real property assets with a stated aggregate value of $320,000.00; (b) the Debtor owned personal property assets with a stated aggregate value of $732,172.16;(c) there were secured claims against the Debtor in the stated aggregate amount of $862,653.00; (d) there were unsecured priority claims against the Debtor in the stated aggregate amount of $210,000.00; and (e) there were unsecured nonpriority claims against the Debtor in the stated aggregate amount of $1,232,769.51 ("Schedule F Debt").  Schedule F Debt subsequently was increased to $1,485,494.51 pursuant to two amendments to the Original Schedules.  (*See* Case ECF Nos. 12 and 46.)[3]

The Schedules list as an asset a "98% Interest in Innovative Realty, LLC ["Innovative"], realty business closed, . . . deemed worthless" with a stated value of $0.00.  (*See* Case ECF No. 1 (Schedule B - Personal Property at item 13).)  Included in Schedule F Debt, the Schedules list a claim for a $450,000.00 debt on a "Judgment for breach of franchise agreement" (*i.e.,* the "ERA Judgment" as hereinafter defined) held by ERA.  (*See id.* (Schedule F- Creditors Holding Unsecured Nonpriority Claims).)  The Schedules list Innovative as a codebtor on the ERA Judgment claim.  (*See id.* (Schedule H - Codebtors).)  The Schedules state that, as of the Petition Date (and for the prior one year period) the Debtor had been employed as a "Facilities Manager" for "Bernies Audio Video TV Appliance Co" with an average monthly net income of $4,161.03.  (*See* Case ECF No. 1 (Schedule I - Current Income of Individual Debtor(s)).)

The Debtor received his chapter 7 discharge on December 4, 2009.  (*See* Case ECF No. 38.)

**B.**     **Adversary Proceeding (In general)**

This adversary proceeding was timely commenced by the filing of a complaint (A.P. ECF No. 1, the "Original Complaint") on October 27, 2009.  As discussed more fully below, the Original Complaint

---

[3]     The Original Schedules, as amended, hereafter are referred to as the "Schedules." The court includes the Schedules for purposes of completeness and for any admissions by the Debtor that they may contain.

was stated in three counts: First Count (Infringement Under the Lanham Act); Second Count

(Cybersquatting under Lanham Act); and Count Three [sic] (Non-Dischargeable Debt Under Section

523(a)(6)). (*See id.*)  The Debtor filed the Motion To Dismiss (and a supporting memorandum of law) on

December 10, 2009, and ERA filed the ERA Objection on January 4, 2010.  A hearing on the Motion To

Dismiss and the ERA Objection was held on January 6, 2010 (the "1/6/10 Hearing").  At the conclusion

of the 1/6/10 Hearing, the court issued the Denial Order which stated in its entirety as follows: "For the

reasons stated on the record at the January 6, 2010 hearing, the Motion [To Dismiss] is **DENIED** as to

Count Three (without prejudice to the defendant's right to prove waiver or the like).  As to the First Count

and the Second Count, the Motion [To Dismiss] remains pending." (A.P. ECF No. 21.)  In response to the

court's decision and remarks, counsel for ERA stated at the 1/6/10 Hearing an intent to amend the Original

Complaint rather than file further briefs in respect of the Motion To Dismiss. (*See* Oral Record of 1/6/10

Hearing at 12:48:40 *et seq.*)

ERA filed the Motion To Amend (together with a proposed amended complaint, included in A.P.

ECF No. 26, the "Proposed Amended Complaint") on January 29, 2010.  The Debtor filed the Debtor

Objection on February 12, 2010.  A (continued) hearing was held on the Motion To Amend and the Debtor

Objection on March 3, 2010, and on March 4, 2010 all of the Matters were taken under advisement.  The

Matters, having been briefed and/or argued, now are ripe for the disposition provided for herein below.

## II.  THE ORIGINAL COMPLAINT, THE MOTION TO DISMISS AND THE ERA OBJECTION

### A.  The Original Complaint

The Original Complaint alleges in relevant part as follows.  The Debtor is the former Chief

Executive Officer of Innovative. (*See* A.P. ECF No. 1 ¶ 2.)  ERA is one of the largest facility franchise

systems in the United States and is widely known as a provider of real estate brokerage services.  In

relation thereto, ERA has the exclusive right to use and sublicense certain trade names, trademarks and

service marks, including the name "ERA"®, which have been registered on the Principal Register of the

United States Patent and Trademark Office, with other appropriate state agencies in the United States, and

with governmental agencies of foreign countries.  (*See id.* ¶¶  5-6.)[4]  ERA or its predecessors have

continuously used each of the ERA Marks since the date of their registration and those service marks are

in full force and effect pursuant to 15 U.S.C. § 1065.  ERA has given notice to the public of the ERA

Marks as provided in 15 U.S.C. § 1111 and ERA uses or has used the ERA Marks as abbreviations of its

brand name.  (*See id.* ¶¶ 9-10.)  ERA has developed a franchise system (the "ERA System") for the

promotion and assistance of independently owned and/or operated real estate brokerage offices.  (*See id.*

¶ 7.)  Through the ERA System, ERA markets, promotes and provides services to its real estate broker

franchisees throughout the United States.  To identify the origin of their real estate brokerage services,

pursuant to franchise agreements, ERA allows its franchisees to utilize the ERA Marks and otherwise to

associate their respective brokerage services with the ERA® brand.  (*See id.* ¶ 11.)

Innovative and ERA entered into certain franchise agreements (collectively, the "Franchise

Agreements") and related agreements for the operation of real estate brokerage offices (collectively, the

"Offices") at nine different locations identified in the Original Complaint.  ERA claims that the terms of

all of the Franchise Agreements were similar, if not identical to each other.  (*See* A.P. ECF No. 1 ¶¶ 15-

---

[4]      Those marks, together with certain other trademarks and service marks which are not
registered or which are pending registration are collectively referred to in the Original Complaint as the
"ERA Marks." (*See id.* ¶ 6.)  For purposes of convenience, the court uses the term "ERA Marks" herein
to refer only to trademarks and service marks that are validly registered.

17.)[5] Pursuant to the Franchise Agreements, Innovative was granted a personal nonexclusive license to utilize the ERA Marks and ERA System in the operation of certain real estate brokerage offices (*i.e.,* the Offices). The Debtor executed a guaranty of the payment and performance obligations to ERA of Innovative under the Franchise Agreements. The Franchise Agreements obligated Innovative to pay to ERA a royalty fee (a "Royalty Fee") on certain terms and conditions set forth in the Franchise Agreements. Nonpayment of the Royalty Fee was an event of default under the Franchise Agreements. In addition to the Royalty Fee, the Franchise Agreements obligated Innovative to pay to ERA an advertising fund contribution (an "Advertising Contribution") on certain terms and conditions set forth in the Franchise Agreements. Nonpayment of the Advertising Contribution was an additional event of default under the Franchise Agreements. (*See id.* ¶¶ 18-24.)

Innovative and the Debtor also were obligated to ERA pursuant to certain promissory notes (collectively, the "Notes") described with more particularity in the Original Complaint. Innovative's obligations pursuant to the Franchise Agreements and the Notes are secured by collateral described with more particularity in the Original Complaint. (*See* A.P. ECF No. 1 ¶¶ 25-28.)

Innovative defaulted under the terms of the Franchise Agreements. A default under any of the Franchise Agreements also constituted a default under the Notes. Accordingly, some time subsequent to default ERA accelerated all amounts payable under the Notes. On various dates between January 1, 2007 and April 1, 2007, ERA terminated each of the Franchise Agreements by written Notices of Termination. (*See* A.P. ECF No. 1 ¶¶ 29-32.)

---

[5]     Exhibit A to the Original Complaint is used by ERA as an exemplar Franchise Agreement (*see id.* ¶ 17.) The Proposed Amended Complaint uses a different exemplar Franchise Agreement.

Pursuant to the Franchise Agreements, termination of the Franchise Agreements precluded Innovative from any further use of the ERA Marks or ERA System and required Innovative to "de-identify" the Offices from their appearance as ERA affiliated real estate brokerage businesses.  The termination of the Franchise Agreements also prohibited Innovative from utilizing the ERA Marks to induce the public into believing that Innovative continued to be an ERA affiliated business.  (*See* A.P. ECF No. 1 ¶¶ 33-35.)

After termination of the Franchise Agreements, Innovative and the Debtor continued to use the ERA Marks for the purposes described in the Original Complaint, despite their knowledge of their lack of any authority or right to do so.  Despite ERA's demand that they cease, Innovative and the Debtor continued their unauthorized use of the ERA Marks in violation of §§ 32 and 43 of the Lanham Act (15 U.S.C. §§ 1114, 1116 and 1125).  (*See* A.P. ECF No. 1 ¶¶ 36-41.)  Such acts were "ongoing" as of the date of the commencement of this adversary proceeding, were "malicious, fraudulent, willful, and deliberate," and "inflicted irreparable harm on ERA."  (*See id.* ¶¶ 55-56.)[6]

Subsequent to termination of the Franchise Agreements, Innovative and the Debtor continued to utilize the domain name, among others, www.goera.com, a domain name which contains the protected ERA name.  The foregoing confused internet users into believing that the Debtor retained an affiliation with ERA, and which sought to drive, and did in fact drive, commercial internet traffic to the Debtor's website through the use of the ERA name, all in contravention of 15 U.S.C. § 1125(d)(1)(A) (Section 43(d) of the Lanham Act).[7]  In so doing, the Debtor "acted with bad-faith intent to profit from the mark and has

---

[6]     The Original Complaint sets forth certain specific conduct in that regard.  (*See* A.P. ECF No. 1 ¶¶ 40-41.)

[7]     All conduct alleged in the Original Complaint to be in violation of the Lanham Act is hereafter collectively referred to as "Lanham Act Conduct."

registered, trafficked in, or used a domain name that is identical or confusingly similar to ERA's protected

marks." (*See* A.P. ECF No. 1 ¶¶ 58-61.)

On April 23, 2007, ERA commenced a civil action against Innovative and the Debtor (among

others) in the United States District Court for the District of Connecticut (Case No. 3:07-cv-00633 (RNC),

the "District Court Action").[8]  The Second Amended Complaint (the "District Court Complaint") in the

District Court Action alleged (among other things) breach of contract, breach of guaranties, false

designation (violation of 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act)), cyber piracy (violation

of Section 43(a) of the Lanham Act), trademark infringement (violation of 15 U.S.C. § 1114(i)), trademark

dilution (violation of 15 U.S.C. § 1125(c)) and violation of the Connecticut Unfair Trade Practices Act.

On January 14, 2008, a stipulated judgment (Exhibit B to the Original Complaint, the "ERA Judgment")

was entered in the District Court Action against Innovative and the Debtor in the amount of $451,695.00.

(*See* A.P. ECF No. ¶ 42.)  The ERA Judgment provides in relevant part:

> 1.  Judgment for money damages shall enter against Innovative and . . . [the Debtor], jointly
> and severally, of $451,695.00, which amount represents royalties and related amounts due
> under the . . . Notes and Franchise . . . Agreements.
>
> 2.  Innovative and . . . [the Debtor] shall immediately transfer to . . . [ERA], or arrange to
> have transferred to . . . [ERA], the Internet domain name "www.goera.com."
>
> This Stipulated Judgment does not affect or dispose of . . . [ERA's] claims in this matter
> against defendants other than Innovative and . . . [the Debtor].

(A.P. ECF No. 1 (Exhibit B).)  Innovative and the Debtor were, on the Petition Date, indebted to ERA "in

at least the amount of $473,295.68, which includes the amount of the [ERA] Judgment plus interest,"

(*id.* ¶ 43).

---

[8]     The court takes judicial notice of the record in the District Court Action to the extent set
forth herein.

The Original Complaint alleges that the Debtor's actions with respect to Lanham Act Conduct have caused "willful and malicious injury to ERA and/or ERA's property" and the Debtor's resulting debt to ERA was not discharged in this chapter 7 case pursuant to 11 U.S.C. § 523(a)(6). (*See* A.P. ECF No. 1 ¶¶ 63-64.)

### B.     The Motion To Dismiss and the ERA Objection

In the Motion To Dismiss, the Debtor argues that the Original Complaint must be dismissed pursuant to Rule 12 of the Federal Rules of Civil Procedure (made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure) because it fails to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The Debtor argues that the relief sought in the Original Complaint is barred by the *res judicata* effect of the ERA Judgment which, the Debtor argues, specifically earmarks the stipulated ERA Judgment to dischargeable contract claims. As a result, the Debtor further argues, ERA may not "go behind the [ERA J]udgment" under the authority of *Brown v. Felsen,* 442 U.S. 127 (1979).

In the ERA Objection, ERA argues that damages in respect of Lanham Act Conduct fall within the purview of the ERA Judgment's earmark to "related amounts due under the . . . Franchise Agreements" (citing specific provisions of the Franchise Agreements which, ERA argues, requires the Debtor to "de-identify" the Offices from their appearance as affiliated with ERA and required the Debtor to cease use of the ERA Marks upon termination of the Franchise Agreement). ERA further argues that, in any event, nothing in the ERA Judgment precludes this court (and this court indeed is required to "go behind") the ERA Judgment under the authority of *Brown v. Felsen, supra.*

## III.     THE MOTION TO AMEND AND THE DEBTOR OBJECTION

The Motion To Amend seeks to amend the Original Complaint in accordance with the Proposed Amended Complaint. The paragraphs at issue in the Proposed Amended Complaint state as follows:

**F.      The Pre-Petition Lawsuit**

42.      Pre-petition, ERA commenced suit against Innovative Realty, Kroeber, R.F. Crossen Realty Group, Inc., Stacy Lastrina, Jane B. Sinisgalli-Carta, and Raymond Crossen in the United States District Court for the District of Connecticut for, among other things, breach of contract, breach of guarantees, false designation, cyber piracy, trademark infringement, trademark dilution, and violation of the Connecticut Unfair Trade Practices Act (the "District Court Litigation").

43.      Following some initial discovery, the parties came to a consensual resolution for the payment to ERA by Innovative Realty and Kroeber of $451,695 (the "Settlement Amount").

44.      The parties entered into a Settlement Agreement which required Innovative Realty and Kroeber to, among other things, provide assistance to ERA in removing signage bearing certain of the ERA Marks from Innovative Realty's office located at 65 Amity Road, Woodbridge, Connecticut (the "Amity Road Location"). A copy of the Settlement Agreement is attached hereto as Exhibit "B".

45.      As part of the settlement, the parties executed a Stipulated Judgment, which, among other things, required Kroeber to immediately transfer to ERA the internet domain name: www.goera.com (the "ERA Domain Name"). The Stipulated Judgment was made a part of, and incorporated into, the Settlement Agreement. A copy of the Stipulated Judgment entered in the District Court Litigation on January 14, 2008 is attached hereto as Exhibit "C".

46.      Kroeber did not comply with the terms of the Settlement Agreement or the Stipulated Judgment in certain key respects. Specifically, Kroeber failed to immediately transfer the ERA Domain Name to ERA, and failed to provide assistance to ERA in removing the signage bearing certain ERA Marks from the Amity Road Location.

47.      Kroeber's failure to immediately transfer the ERA Domain Name and failure to provide assistance to ERA in removing the signage bearing certain of the ERA Marks from the Amity Road Location also constituted continued infringement and cyberpiracy.

48.      Following execution of the Settlement Agreement and entry of the Stipulated Judgment, Innovative Realty and Kroeber continued their unauthorized use of the ERA Marks in violation of §32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1116 and 1125, as well as state law and common law prohibiting trademark infringement and unfair competition.

49.      Moreover, no portion of the Settlement Amount has been paid to ERA.

50.     Paragraph 5 of the Settlement Agreement provides that, in the event that Kroeber failed to perform his obligations under the Settlement Agreement, ERA "reserves the right to seek all relief to which it may be entitled." *See* Exhibit "B" ¶ 5.

51.     Kroeber was, at the time of the filing of the petition initiating the bankruptcy proceeding, indebted to ERA for damages arising from his infringement and cybersquatting that occurred prior and subsequent to entry of the Stipulated Judgment.

52.     ERA files this action to fix its infringement damages claim against Kroeber and for a determination that its infringement damages claim against Kroeber is non-dischargeable.

The Proposed Amended Complaint then incorporates the foregoing allegations into the First Count,

the Second Count and Count Three thereof.  (*See* Proposed Amended Complaint ¶¶ 53, 65, 70.)[9]

The Debtor's Objection objects to the Disputed Paragraphs as follows:

  6.  The Defendant's initial objection to the [Proposed] Amended Complaint is that, to the extent that it merely restates the allegations in the [Original] Complaint and still seeks to "fix" the infringement claims as alleged in the [Original] Complaint, those claims are still barred by res judicata as the Defendant argued in its Motion To Dismiss.

  7.  The Defendant's second objection to the [Proposed] Amended Complaint is that it contains new factual allegations that do not relate back to the [Original] Complaint.

(A.P. ECF No. 35 ¶¶ 6-7.)  Accordingly, the Debtor requests that the Disputed Allegations be stricken from

the Proposed Amended Complaint.  (*See id.* ¶ 10.)

## IV.   ANALYSIS (MOTION TO AMEND)

### A.   Legal Standard

#### 1.     In General

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings and provides that "a party may amend the party's pleading only by leave of court or by written consent of the other party; and leave shall be given as justice so requires." Fed. R. Civ. P. 15(a) . . . . [Subject to Rule 15(c), l]eave to amend is generally granted unless there appears to be

---

[9]     Paragraphs 42 through 52, 53, 65 and 70 of the Proposed Amended Complaint are hereinafter referred to collectively as the "Disputed Paragraphs."

bad faith or unnecessary delay on the part of the movant, or permitting the proposed amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182 . . . (1962).

In determining whether to grant leave to amend, the court applies the same standard as that for a motion to dismiss under Rule 12(b)(6)[10] . . . .

The party opposing amendment bears the burden of demonstrating that leave to amend would be prejudicial or futile.

*Garcia v. Pancho Villa's of Huntington Village, Inc.,* 268 F.R.D. 160, 164 (E.D.N.Y. 2010).  A proposed

amendment is futile if the complaint (as amended) would not survive a motion to dismiss.  *See Ricciuti v.*

*N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991).

### 2.    Relation Back

Rule 15(c)(2) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  The purpose of "Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'"  *Siegel* [*v. Converters Transp., Inc.*]*,* 714 F.2d [213,] 216 [2d Cir. 1983] (quoting 6 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1471 at 359 (1971)).  "For a newly added action to relate back, 'the basic claim must have arisen out of the conduct set forth in the original pleading . . . .'" *Tho Dinh Tran* [*v. Alphonse Hotel Corp.*]*,* 281 F.3d [23,] 36 [2d Cir. 2002] (quoting *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986)). Under Rule 15, the "central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading."  *Stevelman* [*v. Alias Research Inc.*]*,* 174 F.3d [79,] 86 [2d Cir. 1999] (internal quotations and citation omitted).  Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs. *Id.* at 87.

For example, where an initial complaint alleges a "basic scheme" of defrauding investors by misrepresenting earnings and profitability, an allegation of accounts receivable manipulation in an amended complaint will relate back because it is a "natural offshoot" of that scheme.  *In re Chaus Sec. Litig.,* 801 F.Supp. 1257, 1264 (S.D.N.Y. 1992).  And where an initial complaint alleges "inadequate internal controls" leading to overstatement of accounts receivable, a defendant is on notice of a claim in an amended complaint that

---

[10]    The legal standard for motions brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure is discussed below at part V.A.

it improperly recognized revenues and failed to establish sufficient reserves for doubtful accounts in violation of GAAP and industry standards. *Stevelman,* 174 F.3d at 86, *see also Siegel,* 714 F.2d at 216 (initial complaint seeking recovery of all unpaid services provided and commissions paid in condition with shipping services constituted notice of each specific shipping transaction listed in amended complaint); *Tiller* [*v. Atlantic Coast Line R. Co.*]*,* 323 U.S. [574,] 580-81 [1945] . . . (initial complaint alleging various negligent actions by railroad that caused death provided notice of allegation of one more similar negligent action causing death). In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an "entirely distinct set" of factual allegations will not relate back. *Nettis* [*v. Levitt*]*,* 241 F.3d [186,] 193 [2d Cir. 2001].

*Slayton v. American Express Co.,* 460 F.3d 215, 228 (2d Cir. 2006). *See also Flagstar Bank, FSB v. Ticor Title Ins. Co.,* 660 F.Supp. 2d 346, 352 (D. Conn. 2009) ("An amendment to a pleading relates back to the date of the original pleading when [] . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading, such as when the later pleading merely clarifie[s] or expand[s] upon the basic factual allegations of the original or simply alter[s] a legal theory . . . .") (last alteration added citations; internal quotation marks and footnote omitted).).

Here, the deadline that ERA must successfully address is the deadline for filing complaints under Bankruptcy Code § 523(c) imposed by Rule 4007 of the Federal Rules of Bankruptcy Procedure. In this case, that time period ended on October 27, 2009. (*See* Case ECF No. 7.)

### B.   Application of Law to Alleged Facts

#### 1.   Futility

Suits on post-complaint conduct generally are not barred under principles of the "claim preclusion" branch of res judicata (although the "issue preclusion" branch of res judicata may apply). *See, e.g.,*

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 400 F.3d 139 (2d Cir. 2005).[11]  Accordingly, because the

conduct alleged in the Disputed Paragraphs is post-District Court Complaint conduct,[12] the doctrine of

claim preclusion would not apply.  The doctrine of issue preclusion might apply.  However, as discussed

more fully in part V, *infra,* the Debtor has failed to carry his burden on that point.  Accordingly, the Debtor

also has failed to carry his burden on futility of the proposed amendment as to post-District Court

Complaint Lanham Act Conduct.

### 2.   Relation Back

### a.   First Count

Paragraphs 55 and 56 of Count One of the Original Complaint refer to "Kroeber's on-going acts

of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act."  (A.P. ECF No. 1 ¶¶ 55-

56.)  Accordingly, the Debtor was on sufficient notice that his post-District Court Complaint conduct was

at issue.  The proposed amendment merely renders those prior allegations "more definite and precise,"

*Slayton*, 460 F.3d at 228.  Accordingly, the proposed amendment of the First Count  relates back to the

filing of the Original Complaint.  Therefore, the Motion To Amend will be granted as to the First Count

(and the Debtor Objection will be overruled as to the First Count).

---

[11]  [A]s a matter of logic, when the second action concerns a transaction occurring after
the commencement of the prior litigation, claim preclusion generally does not come
into play.  Claims arising subsequent to a prior action need not, and often perhaps
could not, have been brought in that prior action; accordingly, they are not barred by
*res judicata* regardless of whether they are premised on facts representing a
continuance of the same course of conduct.  The crucial date is the date the complaint
was filed.

*Id.,* 400 F.3d at 141 (internal quotation marks and citations omitted).  Both branches of *res judicata* are
discussed more fully at part V.B, *infra.*

[12]      The court need not now decide whether the operative date for that definition is the date of
commencement of the District Court Action or the date of filing of the District Court Complaint.

### b.    Second Count

There are no allegations of continuing conduct in the Second Count.  It is true that paragraphs 55

and 56 of the Original Complaint are incorporated into the Second Count by paragraph 57.  It is true that

paragraphs 55 and 56 refer to violations of Sections 32, 43(a) and 43(c) of the Lanham Act.  (*See* A.P. ECF

No. 1 ¶¶ 55-56.)  However, the Second Count is limited to Lanham Act Conduct under Lanham Act

§ 43(d).  Accordingly, the Debtor was not on notice that his post-District Court Complaint conduct would

be at issue as to Count Two.  Therefore, the proposed amendment cannot relate back and the Motion To

Amend will be denied as to the Second Count (and the Debtor Objection will be sustained as to the Second

Count).[13]

## V.    ANALYSIS (MOTION TO DISMISS)

### A.    Legal Standard

#### 1.    Rule 12 (b)(6) Standard

In assessing a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which

relief may be granted, the court must accept the facts alleged in the complaint as true and liberally construe

them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). The Court

of Appeals of the Second Circuit has stated that "a motion under Rule 12(b)(6) presents a pure legal

question . . . based on allegations contained within the four corners of the complaint."  *Goldberg v.*

*Danaher*, 599 F.3d 181, 183 (2d Cir. 2010).  In order to "survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (citation and internal quotation marks omitted).  In other words,

---

[13]    To the extent that Count Three incorporates the First Count and the Second Count, the Motion To Amend and the Debtor Objection as applied to Count Three are disposed of in a manner consistent with the referenced disposition as to the First Count and the Second Count.

although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the

grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration in original; citation and internal quotation marks omitted).

### 2.   Res Judicata (In General)[14]

Res judicata has two branches: claim preclusion; and collateral estoppel/issue preclusion. *See*

*Taylor v. Sturgell,* 553 U.S. 880 (2008).  Both branches are applied in bankruptcy. *See Grogan v. Garner,*

498 U.S. 279, 284 n.11 (1991) (issue preclusion applied); *Brown v. Felsen, supra* (claim preclusion

applied).  "The doctrine of . . . claim preclusion, holds that a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised in that

action." *ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 547 F.3d 109, 112 n. 2 (2d Cir. 2008).

"The fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that an issue

of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not

be relitigated in a subsequent suit between the same parties or their privies." *Ali v. Mukasey,* 529 F.3d 478,

489 (2d Cir. 2008) (citations, internal quotation marks and emphasis omitted).

> Accordingly, collateral estoppel applies when: (1) the issues in both proceedings are
> identical, (2) the issue in the prior proceeding was actually litigated and actually decided,
> (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the

---

[14]     For jurisdictional purposes, the Lanham Act Conduct claims in the District Court Complaint are federal claims as to which federal law governs the res judicata effect of any judgment on them. *See e.g., Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 324 n.12 (1971) ("This Court has noted, 'It has been held in non-diversity cases since *Erie R. Co. v. Tompkins,* that the federal courts will apply their own rule of res judicata.'").  The parties do not appear to dispute that point.  In any event, Connecticut law on res judicata is substantially similar to relevant federal law. *See Gambino v. American Guarantee & Liability Ins. Co.,* No. 3:09-CV-00304 (CFD), 2009 WL 3158151 at *2 (D. Conn. Sept. 28, 2009).

issues previously litigated were necessary to support a valid and final judgment on the merits.

*Id.* at 489 (internal quotation marks omitted).

The party asserting either branch of res judicata bears the burden of demonstrating that it is entitled to such relief.  *See Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 572 (6th Cir. 2008), *cert. denied*, 129 S.Ct. 2159 (2009) (res judicata); *Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.,* 409 F.3d 87, 93 (2d Cir. 2005) (collateral estoppel).

## B.    Application of Law (Effect of ERA Judgment)

### 1.    Post-District Court Complaint Lanham Act Conduct

As discussed above, to the extent that post-District Court Complaint conduct is at issue, claim preclusion does not bar such suit.  Although issue preclusion theoretically might apply to such conduct, as discussed below the Debtor has not carried his burden on that issue in the context of the Motion To Dismiss.

### 2.    Pre-District Court Complaint Lanham Act Conduct (Effect of ERA Judgment)

#### a.    Res Judicata (Claim Preclusion)

In *Brown v. Felsen,* the Court explained that the doctrine of claim preclusion applied to bankruptcy nondischargeability proceedings in a unique manner:

> Respondent's res judicata claim is unlike those customarily entertained by the courts. For example, this case is readily distinguishable from *Chicot County Drainage Dist. v. Baxter State Bank*, [308 U.S. 371, 60 S.Ct. 317 (1940)]. There, bondholders participated in a federal statutory proceeding for the readjustment of indebtedness and a judgment was entered. After parties from another State succeeded in having the statute declared unconstitutional, the bondholders brought a suit seeking to collect the sums that had been due before readjustment. The Court held that res judicata barred the second suit and said that the bondholders "were not the less bound by the decree" because they failed to raise the constitutional claim in the first proceeding. 308 U.S., at 375, 60 S.Ct., at 319.

Here, in contrast, petitioner readily concedes that the prior decree is binding. That is the cornerstone of his claim. He does not assert a new ground for recovery, nor does he attack the validity of the prior judgment. Rather, what he is attempting to meet here is the new defense of bankruptcy which respondent has interposed between petitioner and the sum determined to be due him. A substantial minority of state-court decisions, particularly those following *Fidelity & Casualty Co. v. Golombosky*, 133 Conn. 317, 322-324, 50 A.2d 817, 819-820 (1946) (Maltbie, C. J.), have recognized this distinction and have refused to apply res judicata in determining the dischargeability of debts previously reduced to judgment. Respondent has upset the repose that would justify treating the prior state-court proceeding as final, and it would hardly promote confidence in judgments to prevent petitioner from meeting respondent's new initiative.

*Id.,* 442 U.S. at 131-134 (footnote omitted).  The Court further stated:

Respondent argues that the state-court collection suit is the appropriate forum for resolving all debtor-creditor disputes, including those concerning dischargeability. While in some circumstances the consolidation of proceedings may be desirable, here consolidation would undercut a statutory policy in favor of resolving § 17 questions in bankruptcy court, and would force state courts to decide these questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them.

*Id.* at 134.

In accordance with the same rationale and policy concerns, this court holds that claim preclusion does not bar the litigation here.[15]  Rather, the "battle" should be fought under the rubric of collateral estoppel/issue preclusion.

### b.      Res Judicata (Collateral Estoppel/Issue Preclusion)

The Debtor defends here on the issue preclusion effect of the ERA Judgment.[16]  However, the correct interpretation of the ERA Judgment is at issue.  Essentially, the Debtor argues that the ERA

---

[15]      Moreover, the contrary rule would discourage settlements of the underlying claim even if no bankruptcy is ever commenced by the defendant. *Cf. Archer v. Warner,* 538 U.S. 314 (2003).  That result would be contrary to public policy.

[16]      It goes without saying that ERA may not, pursuant to the First Count and the Second Count, "refix" damages to the extent that such damages were "fixed" (*i.e.,* awarded) pursuant to the ERA Judgment.

Judgment had the effect of a "take nothing" verdict with respect to the Lanham Act Conduct counts against

the Debtor as pled in the District Court Complaint (except, perhaps, with respect to the Internet domain

name provision of the ERA Judgment). On the other hand, as discussed above ERA argues that damages

in respect of Lanham Act Conduct fall within the purview of the ERA Judgment's earmark to "related

amounts due under the . . . Franchise Agreements . . . ." Resolution of the foregoing issue (which may

raise questions of the intent of the parties) is inappropriate in the context of this motion to dismiss.

Accordingly, (subject to note 16, *supra*) the Motion To Dismiss is denied and the ERA objection is

sustained.[17]

## VI.   CONCLUSION

For the reasons set forth above, the following dispositions hereby are made: (a) the Motion To

Amend (A.P. ECF No. 26) is granted in part and denied in part, and the Debtor Objection (A. P. ECF No.

35) is overruled in part and sustained in part, all to the extent set forth above; and (b) the Motion To

Dismiss (A.P. ECF No. 11) is denied and the ERA Objection (A.P. ECF No. 19) is sustained.[18] On or

before October 29, 2010, ERA shall file and serve an amended complaint consistent with the foregoing.

It is **SO ORDERED.**

Dated: October 15, 2010                                          BY THE COURT

Lorraine Murphy Weil
**Lorraine Murphy Weil**
**Chief United States Bankruptcy Judge**

---

[17]      Moreover, the parties have not considered the collateral estoppel issue fully. For example, what is the issue preclusion effect of a stipulated judgment entered prior to trial? How are the requirements for collateral estoppel/issue preclusion set forth in part V.A.2, *supra,* applied to such a judgment?

[18]      The Dismissal Order (A. P. ECF No. 21) hereby is reconsidered and/or clarified to the extent inconsistent herewith.